**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
_____
                              :
RICKY LEAKE,                  :  CIVIL ACTION
                              :
          Petitioner,         :
                              :
     v.                       :  NO. 10-7406
                              :
JEFFREY N. DILLMAN,           :
                              :
          Respondents.        :
_____ :
```

ARNOLD C. RAPOPORT
UNITED STATES MAGISTRATE JUDGE

**REPORT AND RECOMMENDATION**

Ricky Leake filed a pro se petition for writ of habeas corpus on December 20, 2010.  He asserts claims attacking his conviction in the Philadelphia Court of Common Pleas for first degree felony robbery, second degree felony aggravated assault, first degree felony criminal conspiracy, and possessing an instrument of crime.  By Order date August 1, 2011, I directed the Commonwealth to file a supplemental response addressing the application of Bruton v. United States, 391 U.S. 123 (1968) and its progeny to the claims raised in Leake's petition, as discussed in the holding of the United States Court of Appeals for the Third Circuit in Pabon v. Superintendent, SCI Mahanoy, 654 F.3d 385, 393-95 (3d Cir. 2011).[1]  After the grant of several

_____

[1]I note, preliminarily, that the Commonwealth includes a lengthy discussion in its Supplemental Response arguing that Pabon, because it is a decision of an inferior federal court, is inapplicable to AEDPA review of a state habeas petition.  Supp. Resp. at 18-20.  I did not intend the use of the word "application" in the Order to infer that Pabon was binding

extensions of time, the Commonwealth filed its response on
October 25, 2011.  For the following reasons, I recommend that a
claim for ineffective assistance based on a Bruton issue was
fairly presented to the state courts in Leake's petition for
collateral relief.  I further recommend that the state courts'
adjudication of Leake's claims of constitutionally ineffective
assistance of counsel arising from (1) trial counsel's failure to
object to the introduction of a co-defendant's statement and (2)
appellate counsel's failure to appeal the trial court's denial of
his motion to sever his case from that of his codefendant, were
unreasonable applications of Supreme Court law.  Accordingly, I
recommend that the petition be conditionally granted subject to
the right of the Commonwealth to retry Leake.

---

precedent.  I intended and specified that the Commonwealth should
address the scope of Bruton and its progeny, as discussed in
Pabon.  In this Report and Recommendation, I do not treat Pabon
as clearly established federal law as determined by the United
States Supreme Court.  See 28 U.S.C. § 2254(d)(1).  However, the
opinions of the lower federal courts are relevant to determining
whether a state court's application of Supreme Court precedent is
reasonable.  Marshall v. Hendricks, 307 F.3d 36, 71 n. 24 (3d
Cir. 2002); Moore v. Morton, 255 F.3d 95, 104 n. 8 (3d Cir.
2001); Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 890
(3d Cir. 1999) (holding that in certain cases it may be
appropriate to consider the decisions of inferior federal courts
as helpful amplifications of Supreme Court precedent, even though
federal courts may not grant habeas corpus relief based on the
state court's failure to adhere to the precedent of a lower
federal court on an issue that the Supreme Court has not
addressed) citing O'Brien v. Dubois, 145 F.3d 16, 20 (1st Cir.
1998) ("To the extent that inferior federal courts have decided
factually similar cases, reference to those decisions is
appropriate in assessing the reasonableness vel non of the state
court's treatment of the contested issue.")

## I.    FACTS AND PROCEDURAL HISTORY.[2]

Leake was convicted following a joint jury trial with his codefendant Carl Murphy.  The charges arose from an incident that occurred on July 28, 2004. Leake's victim, Andrew Lewin, entered a home located at 818 Stella Street in Philadelphia in order to buy heroin from his drug supplier, "Steve," a Hispanic male standing 5'6" and weighing 130 pounds. N.T. 9/15/05, at 56. Lewin testified he was confronted and pushed backwards into the home's kitchen area by Leake and Murphy, who were lying in wait to rob Steve.  Both were wearing Halloween masks.  Id. at 50-53. Both men were armed.  Id. at 55.  During the assault on Lewin, Steve entered the home and was also attacked by both Leake and Murphy.  Id. at 56.

Lewin received a stab wound and was beaten with a pistol. Id. at 60-65.  Eventually, Lewin pretended to be knocked unconscious and Murphy and Leake went through his pockets, stole over $60, and left the scene. Id. at 62-63.  Because he was at Stella Street to purchase drugs, Lewin did not wish to report the assault to the police.  Id. at 66.  However, when he exited the house, the Philadelphia Police were at the scene.  To hide the fact that he was purchasing drugs, he told the police that he had

---

[2]Unless otherwise cited, the facts surrounding Leake's conviction are taken from the opinion of the Pennsylvania Superior Court adjudicating his direct appeal.  Commonwealth v. Leake, No. 3529 EDA 2005 (Pa. Super Ct. Dec. 5, 2007), appended as Exhibit A to the Commonwealth's Response.

done work at the house and was assaulted when he returned to pick up his payment.  Id. at 67-68.  Outside the home, Lewin saw Steve's wife, Elizabeth Cruz, but Steve had fled the scene.  Id. at 64, 69-70.

Philadelphia Police Officers William Hunter and Thomas Kuhn testified that they received a radio report of the robbery, indicating that the suspects had just exited the back door of 818 Stella Street.  N.T. 9/16/05 at 42.  The officers went to an alley exiting onto Birch Street, which was the only escape route for the suspects.  When they arrived at the alley, Officer Hunter found Murphy crouching down among the trash.  Id. at 46.  Officer Kuhn was approached by a woman who lived at 809 Birch Street. She brought him to her home, where he found Leake hiding under the kitchen table.  Id. at 73-77.

The two officers brought Leake and Murphy back to the scene of the assault, but because he was at the scene for the illegal purpose of buying heroin, Lewin was reluctant to become involved and told the police that he could not identify his assailants. N.T. 9/15/05 at 79.  Lewin was taken to Temple Hospital for treatment of his injuries.  In a statement given to the police the next day, Lewin again stated that he was unsure as to whether he could identify the individuals who attacked him.  Id. at 77-78.  At a preliminary hearing held on October 16, 2003, Lewin again testified that he was in the area in order to collect

-4-

payment for electrical work and that he could not identify the suspects.  N.T. 9/15/05 at 81-82; N.T. 10/16/03 at 26-35.

In March 2004, Lewin was in a car accident and arrested for driving while under the influence of heroin, at which time his family found out about his drug addiction.  Id. at 83-84.  Lewin began a drug rehabilitation program, and contacted the District Attorney's Office and police in order to admit that he was at 818 Stella Street to buy heroin and state that he could identify the individuals who attacked him.  Id. at 86-88.  Contrary to his prior statements and his testimony at the preliminary hearing, Lewin testified at trial that he was able to see both Leake and Murphy clearly during the assault because both had removed their masks while struggling with Steve.  Lewin provided an in court identification of the two codefendants.  Id. at 57.

Officer John Bernard of the Philadelphia Police interviewed Elizabeth Cruz at the scene.  He testified on direct examination that Cruz was tending to Lewin's wounds when he arrived at the scene.  N.T. 9/16/05 at 8.  He put Cruz in his car and drove her to the corner of 9th and Stella Streets.  Id. at 12.  He later transported her to his precinct.  Id. at 23.  On cross examination by Murphy's counsel, Bernard testified that Cruz identified both defendants at the scene.  Id. at 31.  On redirect examination, he elaborated, testifying that, in identifying the suspects at the scene Ms. Cruz,

-5-

". . . was emphatic.  She pointed to him, and said, 'he's
the one that had the handgun,' pointed to Mr. Murphy, and
pointed to Mr. Leake, and said, 'He's the one that had
the shotgun.'"

Id. at 37.  The record reveals that Leake's counsel offered no

contemporaneous objection to this testimony.

Also testifying was Philadelphia Police Detective John

Lichtner.  He interviewed Ms. Cruz, photographed the crime scene,

and recovered the Halloween masks.  Id. at 116-122.  Det.

Lichtner also took a statement from codefendant Murphy.  After

giving Murphy Miranda warnings, id. 132-136, Murphy confessed to

the robbery at 818 Stella Street.  Id. at 139-40.  The following

statement from Murphy's confession was read by Det. Lichtner to

the jury:

> Question: Do you have a gun out at this time?
> Answer: Yes.  I held the gun in my hand and put him
> against the wall.  I was holding there.  Then the
> Puerto Rican guy came inside.
>      Right away the other guy and him starts fighting.
> The other guy has a shotgun out.  Both our guns are not
> real.  I came over to help the other guy.  Then the
> white guy came over and punched me in the side of my
> face.
>      I slammed him to the ground near the steps and sat
> on top of him with my knee, holding the gun on him.
>      There were people, I don't know who they were,
> trying to come in.  The other guy and the Puerto Rican
> male were fighting near the door.
>      The door would not open.  It was a Puerto Rican
> lady came in and swung a knife at him.
>      The whole body was in the house.  Her head was in.
> She was swinging the knife.
>      The Puerto Rican guy, who was fighting the other
> guy, out up and ran outside.
>      We went upstairs, got out through the back window.
> We both hid in the alley.  I left the other guy and
> tried to get out of the alley.  And the two officers

got me.

N.T. 9/16/05 at 140-41.  The record reveals that trial counsel offered no contemporaneous objection to this testimony.

On September 21, 2005, the jury convicted Leake of aggravated assault, robbery, criminal conspiracy, and possessing an instrument of crime.  N.T. 9/21/05 at 18.  Following his conviction, Leake was sentenced to an aggregate term of imprisonment for 220 to 576 months.  N.T. 11/3/05.

Leake filed a post-sentence motion raising four claims: (1) the sentence was excessive; (2) the court failed to sufficiently consider his background, character, and rehabilitative needs when imposing the sentence; (3) the court did not state sufficient reasons for imposing the sentence; and (4) the court erred in imposing consecutive sentences.  Post Sentencing Motion at ¶ 3. Following a hearing, the court denied the motions on December 7, 2005.  Commonwealth v. Leake, No. 0310-0781 (C.C.P. Phila. Dec. 7, 2005).

Leake filed a direct appeal raising only one issue: whether the trial court erred in failing to instruct the jury regarding the fact that he was "wrongfully denied" a pretrial lineup. Resp. Ex. A.  The Superior Court affirmed the conviction on December 5, 2007.  Id.  Leake did not seek further review before the Pennsylvania Supreme Court.

Leake filed a timely pro se petition under the Pennsylvania

-7-

Post Conviction Relief Act ("PCRA"), 42 Pa. Con. Stat. 9541, et seq., on March 26, 2008.  Counsel was appointed and filed an amended petition on December 12, 2008 stating the following grounds for relief: (1) Trial counsel was ineffective for failing to make proper objections during the trial and (2) Appellate counsel was ineffective for failing to appeal the denial of the Post Sentence Motion, failing to appeal the denial of a pretrial severance Motion, and failing to appeal the denial of a pretrial Rule 600(G) speedy trial motion.  <u>See</u> Amended Petition under PCRA at 3-4.

The petition was formally dismissed on April 17, 2009, and Leake filed a Notice of Appeal on April 24, 2009.  After the court ordered that Leake file a statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(B), he filed a counseled Statement on May 20, 2009, raising the same issues identified in the amended petition.  <u>See</u> Statement of Matters Complained of on Appeal.  The PCRA Court issued an opinion on August 27, 2009 explaining its rationale for dismissing the petition.  <u>Commonwealth v. Leake</u>, CP-51-CR-1007811-2003 (C.C.P. Phila. Aug. 27, 2009) ("PCRA Decision").  The Superior Court likewise found that Leake's PCRA petition was meritless in a decision issued May 27, 2010.  <u>Commonwealth v. Leake</u>, No. 1186 EDA 2009 (Pa. Super. Ct. May 27, 2010) ("Superior Court Decision").  On November 1, 2010, the Pennsylvania Supreme Court

-8-

denied Leake's petition for allowance of appeal.  Leake timely
filed the pending Petition for Writ of Habeas Corpus on December
20, 2010, raising as issues that:  trial counsel was ineffective
for failing to make proper objections during the trial and
appellate counsel was ineffective for failing to argue the denial
of the Post Sentence Motion, failing to argue the denial of the
severance motion, and failing to argue the denial of the Rule 600
(G) motion.

## II.        THE AEDPA STANDARD.

I analyze these claims according to the precepts of
Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)
which altered habeas review of state convictions brought under §
2254.  Under AEDPA, a petitioner must demonstrate that the state
court's adjudication of the merits "resulted in a decision that
was contrary to, or involved an unreasonable application of
clearly established Federal law, as determined by the Supreme
Court of the United States."  See Penry v. Johnson, 532 U.S. 782,
792-92 (2001) (explaining two-prong standard); Williams v.
Taylor, 529 U.S. 362, 403-04 (2000) (same).  Additionally, state
court findings of fact are to be presumed correct unless the
petitioner rebuts the presumption with clear and convincing
evidence.  See 28 U.S.C. § 2254(e)(1).  This presumption applies
even if the finding was made by a state court of appeals rather
than by the state trial court.  Stevens v. Del. Corr. Ctr., 295

F.3d 361, 368 (3d Cir. 2002) (presumption of § 2254(e)(1) applies
to findings of appellate courts).

The Supreme Court has said that "a state court decision will
be 'contrary to' our clearly established precedent if the state
court either 'applies a rule that contradicts the governing law
set forth in our cases,' or 'confronts a set of facts that are
materially indistinguishable from a decision of this Court and
nevertheless arrives at a result different from our precedent.'"
Penry, 532 U.S. at 792 (quoting Williams v. Taylor, 529 U.S. 362,
405-06 (2000).  A state court decision is an unreasonable
application of the Supreme Court's precedent if the court
"correctly identifies the governing legal rule but applies it
unreasonably to the facts" of the case.  Id.  AEDPA's general
rule of deference applies even if the state court does not cite
to the applicable Supreme Court decisions, or even demonstrate an
awareness thereof, so long as neither the reasoning nor the
result of the state court decision contradicts them.  Early v.
Packer, 537 U.S. 3, 8 (2002); Woodford v. Visciotti, 537 U.S. 19
(2002).

III.    **FAIR PRESENTATION**

In its Supplemental Response filed in accordance with my
August 1, 2011 Order, the Commonwealth first asserts that Leake's
first claim for habeas relief – ineffective assistance of trial
counsel for failing to object to the introduction of codefendant

statements – was never fairly presented to the state courts for decision, and therefore is not properly the subject of habeas relief.  I recommend that the issue was fairly presented.

In order to satisfy the habeas exhaustion requirement, see 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."), a federal habeas claim must have been "'fairly presented' to the state courts. . . .  This means that a petitioner must 'present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'"  Bronshtein v. Horn, 404 F.3d 700, 725 (3d Cir. 2005) (internal citations omitted).  A claim is not fairly presented if the state court "must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim."  Baldwin v. Reese, 541 U.S. 27, 32 (2004).  Mere similarity of the federal and state issues is insufficient to prove exhaustion.  Duncan v. Henry, 513 U.S. 364, 366 (1995).  The relevant inquiry is whether the petitioner presented in state courts the legal theory and supporting facts asserted in the federal habeas petition.  Nara v. Frank, 488 F.3d 187, 198 (3d Cir. 2007); Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001).

The counseled Amended PCRA petition recited the history of Leake's criminal case, including the pretrial motions he filed to sever his case from his codefendant and to dismiss on speedy trial grounds, his post-sentence motions, and the claims Leake raised in the <u>pro</u> <u>se</u> PCRA petition.  Leake had asserted in the <u>pro</u> <u>se</u> filing that,

> trial counsel was ineffective for failing to object to Mr. Murphy (codefendant) statement making reference incriminating Petitioner.  Although the Petitioner name was redacted with the use of "other guy" this still violated the Confrontation Clause.

Attachment to Pro Se Petition Under Post-Conviction Relief Act at 2.

I recommend that Counsel fully incorporated this claim into the Amended Petition by quoting this language verbatim and informing the PCRA court that counsel "now files this Amended Petition and Memorandum of Law under the Post Conviction Relief Act alleging the following grounds for relief: I Trial Counsel was ineffective for the following reasons: (a) for failing to make proper objections during the trial."  Amended Petition at 3. In the accompanying Memorandum of Law, counsel reiterated that the first ineffective assistance claim was based on "failing to make proper objections during the trial."  To support the claim, he quoted at length the portions of the trial transcript in which the codefendant statment was introduced into evidence and argued that trial counsel's failure to object to the statement

-12-

constituted ineffective assistance because the jury was made aware that Murphy's confession inculpated Leake as the person wielding the shotgun during the assault on Lewin. Finally, counsel argued that the failure to object rendered Leake unable to raise the issue on direct appeal. Mem. in Support of Amended Pet. at 11-12.

I recommend that counsel's description of the issue, while unfortunately lacking in the legal exactitude one would expect from a trained attorney, was sufficient to fairly present to the state courts the factual basis and legal theory of an ineffective assistance claim based on a Bruton violation. An issue can be fairly presented in several different ways; through: "(a) reliance on pertinent federal cases; (b) reliance on state cases employing constitutional analysis in like fact situations; (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." Nara, 488 F.3d at 198, citing McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999). While counsel did not cite to Bruton or to cases setting out the parallel state and federal ineffective assistance standards in the Amended Petition, the pattern of facts he presented was "well within the mainstream of constitutional litigation" on Confrontation Clause issues regarding the introduction of

-13-

codefendant statements in a joint trial and sufficiently particular to call Bruton to mind. Because he presented to the state courts the ground upon which trial counsel's actions fell below professional norms and asserted that Leake was prejudiced in being denied his right to directly appeal the issue, counsel fairly presented to the state court both prongs of an ineffective assistance of counsel claim.

III.      INEFFECTIVENESS OF TRIAL COUNSEL

Leake argues ineffective assistance of counsel for both his trial and appellate counsel. Supreme Court law governing a claim of ineffective assistance of counsel was established in Strickland v. Washington, 466 U.S. 668, 687 (1984), where the Court established a two-pronged test to evaluate Sixth Amendment claims of ineffective assistance of counsel. The individual making this claim must show: (1) that "counsel's performance was deficient," which is measured by "reasonableness under prevailing professional norms;" and (2) that counsel's "deficient performance prejudiced the defense." Id. at 687-90.

The Pennsylvania standard for ineffective assistance, i.e., that to show ineffective assistance a petitioner must show that the underlying claim has merit, that counsel had no reasonable basis for his conduct, and resulting prejudice (meaning that the outcome of the proceeding would have been different) see Commonwealth v. Todaro, 701 A.2d 1343, 1346 (Pa. 1997), is

materially identical to the test enunciated in <u>Strickland</u>.   <u>See</u>
<u>Werts v. Vaughn</u>, 228 F.3d 178, 203 (3d Cir. 2000).   Therefore,
"the appropriate inquiry is whether the Pennsylvania courts'
application of <u>Strickland</u> to [petitioner's] ineffectiveness claim
was objectively unreasonable, i.e., the state court decision,
evaluated objectively and on the merits, resulted in an outcome
that cannot reasonably be justified under <u>Strickland</u>."   <u>Werts</u>,
228 F.3d at 204.

     Leake argues that his trial counsel was deficient by not
objecting to the alleged hearsay statements offered by Officer
Bernard and the inculpatory codefendant statement made by Murphy
that was read to the jury by Det. Lichtner.   <u>See</u> Memo in Support
for Amended Petition for Relief Pursuant to PCRA at 11-12 ("PCRA
Memo").   Officer Bernard, quoting the out-of-court statement of
Ms. Cruz, told the jury,

> "She was emphatic. She pointed to him, and said, 'he's
> the one that had the handgun,' pointed to Mr. Murphy, and
> pointed to Mr. Leake, and said, 'He's the one that had
> the shotgun.'"

N.T.9/16/05 at 37.   Thereafter, Det. Lichtner read into the
record the codefendant statement in which Murphy implicated Leake
as the person wielding the shotgun:

> I [Murphy] held the gun in my hand and put him [Lewin]
> against the wall.  I was holding there.  Then the
> Puerto Rican guy [Steve] came inside.
>     Right away the other guy [Leake] and him [Steve]
> starts fighting.  The other guy [Leake] has a shotgun
> out.

N.T. 9/16/05 at 140-41.

The PCRA court concluded that trial counsel could not be deemed ineffective for failing to raise a hearsay objection because there was no reasonable probability that, had counsel not made the alleged errors, the outcome of the trial would have been different.  PCRA Decision at 4.  To support this conclusion, the PCRA Court stated,

> At trial, the jury heard considerable evidence aside from the statement by Ms. Cruz to convict defendant of all charges.  First, prior to Officer Bernard's testimony, Mr. Lewin testified that he could clearly identify defendant and codefendant Murphy as his assailants, and defendant as the one who pointed the longer gun.  Furthermore, the jury heard circumstantial evidence that police found defendant hiding under a table in a nearby home to which he had no connection.  Mr. Lewin's testimony in conjunction with the circumstances of the police discovery and arrest of defendant provided sufficient evidence, such that there is no reasonable probability that an objection to Ms. Lopez's [sic] statement as hearsay would result in a different outcome.

PCRA Decision at 5.

To support its holding that the failure to object to the introduction of the codefendant statement did not constitute ineffective assistance, the PCRA Court reasoned,

> First, codefendant Murphy's statement was admissible and thus counsel had no grounds for objection.  The United States Supreme Court has held that when a codefendant's statement is redacted to remove the defendant's name, that statement is admissible so long as the statement does not clearly demonstrate an alteration to remove defendant's name.  Gray v. Maryland, 523 U.S. 185 (1998).  Furthermore, codefendant's statement regarding defendant was redacted such that no explicit reference to defendant

-16-

or clear evidence of a deletion remained.[3]  Finally,
the court in its final instructions repeated that the
jury should not consider codefendant Murphy's statement
implicating defendant while determining defendant's
verdict (N.T. 9/17/05, 219).[4]  Under Pennsylvania law
it is well established that jury members are presumed
to heed the court's instructions.

PCRA Decision at 5.  I recommend that the PCRA Court's rationale

is not a reasonable application of <u>Bruton</u>, as interpreted in

<u>Gray</u>.[5]

---

[3]I note that the state court record does not contain an
unredacted version of Murphy's confession.  The PCRA Decision
clearly states, however, that redaction was used to cure the
<u>Bruton</u> issue.

[4]The trial court's instruction told the jury:

> Now, we have a rule which restricts the use
> by you of the evidence offered to show that
> the defendant, Carl Murphy, made a statement
> concerning the crime charged.  The statement
> made before trial may be considered as
> evidence only against the defendant who made
> that statement.  Thus, you may consider that
> statement against defendant Carl Murphy if
> you believe he made the statement
> voluntarily.  You must not, however, consider
> the statement as evidence against the
> defendant Ricky Leake.  You must not use this
> statement in any way against Mr. Leake.

N.T. 9/17/05 at 219.

[5]I note in both the Commonwealth's Response and Supplemental
Response it focuses exclusively upon the Superior Court Decision,
rather than the PCRA Decision.  On appeal, the Superior Court
affirmed the dismissal of Leake's ineffective assistance claims
on the ground that the claims were "undeveloped" and that his
failure to meaningfully develop his claims rendered them unworthy
of appellate relief.  Superior Court Decision at 5.  The
Commonwealth argues that the finding that the claims were
undeveloped was not objectively unreasonable.  Resp. at 9, 13;
Supp. Resp. at 14.

In conducting an AEDPA review, federal courts examine the state courts' "last reasoned opinion" on the habeas issue.  <u>Bond v. Beard</u>, 539 F.3d 256, 289-90 (3d Cir. 2008).  In this case, I recommend that the PCRA Court Decision is the last reasoned decision on the merits because the Superior Court's rejection of the appeal because the claims were "undeveloped" did not supplement the PCRA Court's reasoning in any meaningful way.  <u>See, e.g.</u>, <u>Bond v. Beard</u>, 539 F.3d 256, 289-90 (3d Cir. 2008) (agreeing with collected cases holding that habeas court may review lower state court's decision if it represents the state courts' last reasoned opinion on the claim or was not supplemented in a meaningful way by the higher state court); <u>see also</u> <u>Fahy v. Horn</u>, 516 F.3d 169, 197, 203 n. 36 (3d Cir. 2008) (AEDPA's deferential standard of review applied to the Common Pleas Court's decision on the merits, even though when considering that same claim in the subsequent appeal, the Pennsylvania Supreme Court rejected it on procedural grounds).  Accordingly, I recommend that the proper focus of AEDPA review is the PCRA Court's legal conclusions.

Alternatively, to the extent that the Superior Court's legal conclusion that the claims were properly dismissed because they were undeveloped is a reasoned decision on the merits, I recommend that this decision is an unreasonable application of <u>Strickland</u> based on the same rationale supporting my recommendation that the issue was fairly presented to the state courts: the Superior Court was presented with both the factual basis and legal theory supporting the claim.  First, the appellate brief cited <u>Strickland</u> as the basis for the PCRA Petition's failure to object claim and the appellate argument.  Resp. Ex. B at 7.  Second, it presented the Superior Court with a complete <u>Strickland</u> claim based on a <u>Bruton</u> / failure to object theory, i.e., the professional misfeasance apparent on the record and the resulting prejudice.  <u>Id.</u> at 7-8.  Leake, having identified the codefendant statement as the basis for the ineffectiveness / failure to object claim, the Superior Court's statement that he "fail[ed] to offer what objection he believes counsel should have made at trial," Superior Court Decision at 4, is not a reasonable application of <u>Strickland</u>.

Because the nature of the constitutional legal theory was actually raised and the supporting facts were apparent on the record, I reject the Commonwealth's contention that by asking for additional briefing on the <u>Strickland</u> / <u>Bruton</u> issue, "[t]his Court has now identified facts that may or may not benefit petitioner and has suggested *sua sponte*, a new claim."  Supp. Resp. at 14.  This is not a new claim; it is the same claim that Leake fairly presented to the PCRA Court and in his subsequent

-18-

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI.  "The right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him." Pointer v. Texas, 380 U.S. 400, 404 (1965).  In Bruton, the United States Supreme Court held that testimony in a joint trial about a codefendant's statement implicating the defendant was unconstitutional because the defendant had no opportunity to cross-examine the codefendant and a limiting instruction was insufficient to rectify jury exposure to the incriminating statement.  Id. 391 U.S. at 137.  Courts have approved as a solution to this Confrontation Clause problem that codefendant statements be redacted to delete references to other defendants at trial in such a manner that it is not obvious that specific individuals' names were given but have been redacted.  Gray, 523 U.S. at 192; Priester v. Vaughn, 382 F.3d 394, 398-401 (3d Cir. 2004).

Recently the United States Court of Appeals for the Third

_____

appeal.

Finally, I recommend rejection of the Commonwealth's alternate contention, that the Superior Court's conclusion that the claim was undeveloped was a binding finding of fact under 42 U.S.C. § 2254(e)(1).  Resp. at 14.  The only valid reading of the Superior Court's use of the term "undeveloped" is as legal criticism, not a statement of fact.

Circuit extensively reviewed <u>Bruton</u> and its progeny, including
the parameters of the <u>Gray</u> exception, which I quote at length:

> Trials with multiple defendants create
> opportunities for violations of the Sixth Amendment
> right of cross-examination.  <u>Bruton</u> held that, in a
> joint trial, a defendant's right under the
> Confrontation Clause of the Sixth Amendment is violated
> by introducing a non-testifying codefendant's
> confession that implicates the defendant as a
> participant in the crime.  Such statements violate the
> Sixth Amendment even when the jury is explicitly
> instructed that the testimony at issue is only to be
> considered as evidence against the codefendant.  This
> is because jurors in joint trials cannot be expected to
> "perform the overwhelming task of considering" a
> codefendant's confession "in determining the guilt or
> innocence of the declarant and then of ignoring it in
> determining the guilt or innocence of any codefendants.
> . . ." <u>Bruton</u>, 391 U.S. at 131, 88 S.Ct. 1620.  In
> these circumstances, jury instructions are
> "intrinsically ineffective" because the inadmissible
> confession "cannot be wiped from the brains of the
> jurors." <u>Id.</u> at 129, 88 S.Ct. 1620.
>                        . . .
> Two subsequent cases addressed the thorny issue of
> redacted statements of non-testifying codefendants.  In
> <u>Richardson v. Marsh</u>, the Court held that when "any
> reference to [the defendant's] existence" has been
> removed and the confession "bec[omes incriminating]
> only when linked with evidence introduced later at
> trial," limiting instructions may cure what would
> otherwise be a <u>Bruton</u> violation.  481 U.S. 200, 211,
> 208, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).  While the
> testimony in <u>Bruton</u> directly named the defendant, in
> Richardson "the confession was not incriminating on its
> face, and became so only when linked with" the
> defendant's testimony. <u>Id.</u> at 208, 107 S.Ct. 1702.
> The Court noted that "[w]here the necessity of such
> linkage is involved, it is a less valid generalization
> that the jury will not likely obey the instruction to
> disregard the evidence." <u>Id.</u>
> However, the distinction between directly naming a
> codefendant and indirect linkage is not rigid.  Even
> redacted confessions that remove the defendant's name
> completely, using a blank space or neutral pronoun
> instead, may sometimes violate <u>Bruton</u>.  <u>Gray v.</u>

<u>Maryland</u>, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998).  "Redactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration . . . so closely resemble <u>Bruton</u>'s unredacted statements that . . . the law must require the same result."  <u>Id.</u> at 192, 118 S.Ct. 1151.  An "obvious deletion" is likely to "call the jurors' attention specifically to the removed name" and may "overemphasize the importance of the confession's accusation."  <u>Id.</u> at 193, 118 S.Ct. 1151.  Jury instructions are likely to exacerbate the situation, as the instruction itself "will provide an obvious reason for the [redaction]."  <u>Id.</u>

In limiting <u>Richardson</u>, <u>Gray</u> noted that "inference [connecting a codefendant's statement to the defendant] pure and simple cannot make the critical difference" between a Bruton violation and permissible testimony under <u>Richardson</u>.  <u>Id.</u> at 195, 118 S.Ct. 1151.  It is the "**kind** of, not the simple fact of, inference" that might lead a jury to infer that testimony incriminated a codefendant in some redacted statements but not others.  <u>Id.</u> at 196, 118 S.Ct. 1151 (emphasis in original).  Thus, context is relevant to determining whether a <u>Bruton</u> violation has occurred, regardless whether the challenged testimony has been redacted or curative instructions given.

For example, our Court held in <u>Vazquez v. Wilson</u>, 550 F.3d 270 (3d Cir. 2008), that even when neutral pronoun substitution or its equivalent is used (in that case, "my boy" or "the other guy"), if there is a strong implication that the non-testifying codefendant's confession refers to the defendant, it may still violate <u>Bruton</u> despite the substitution and use of jury instructions.  In addition, the number of codefendants that could be implicated in a <u>Gray</u> analysis, where redactions or substitutions have been used, is also important.  <u>Compare</u> <u>United States v. Richards</u>, 241 F.3d 335, 341 (3d Cir. 2001) (<u>Bruton</u> violated where only three people were involved in crime) with <u>Priester v. Vaughn</u>, 382 F.3d 394, 400-01 (3d Cir. 2004) ("another guy" did not implicate any particular person given that at least 15 persons were involved in the crime, and the placeholder used was "bereft of any innuendo [linking] them" to particular defendants, in contrast to Richards in which redactions "were tantamount to an explicit reference" to a codefendant).

Under AEDPA's deferential review standard, our
Court in <u>Vazquez</u> rejected the Pennsylvania Supreme
Court's seeming "bright-line rule that when terms like
'my boy,' the 'other guy,' or the 'other man' are used
[as substitutions,] . . . there cannot be a <u>Bruton</u>
violation." <u>Vazquez</u>, 550 F.3d at 281. Rather, as
<u>Vazquez</u> instructs, using a bright line is "an
unreasonable application 'of clearly established
Federal law under the decisions of the Supreme Court of
the United States'" given the necessity of determining
how strongly a codefendant's statement implicates the
defendant and the likelihood that it would be
disregarded by the jury. <u>Id.</u> at 282.

<u>Pabon</u>, 654 F.3d at 393-95 (internal footnotes omitted).

While citing to the Supreme Court's holding in <u>Gray</u>, the

PCRA Court completely ignored its teaching, applying the holding

in a patently unreasonable manner given the record presented.

First, the PCRA Court did not directly address the obvious

interplay between the Cruz hearsay and the codefendant statement,

instead treating them as separate issues. After finding that the

failure to object to the hearsay could not alone constitute

ineffective assistance because of the other evidence presented by

the Commonwealth, the Court separately concluded that the

redaction of Leake's name in favor of a neutral pronoun left "no

explicit reference to defendant or clear evidence [that] a

deletion remained." However, any objective unblinkered review of

the record shows that the Cruz hearsay left the jury with the

clear contextual inference that the "other guy" was Leake. The

Cruz hearsay statement, introduced on redirect examination after

Murphy's counsel opened the door to its admission, could not be

cross-examined by Leake.  It informed the jury that Cruz emphatically identified Leake to the police as the possessor of the shotgun.  The redacted codefendant statement, which also identified "the other guy" as wielding the shotgun, and which also could not be cross-examined, corroborated the Cruz hearsay and improperly permitted the jury to "fill in the blank."  The only natural inference the jury could have taken from the two statements was that the other guy was Leake, for no other reason than there was no one else involved in the crime.  As the Third Circuit noted, in conducting a <u>Bruton</u> / <u>Gray</u> analysis the number of codefendants that could be implicated where redactions or substitutions have been used, is important.  The PCRA Court did not consider who else the redacted statement might have referenced, adapting a bright line rule that the fact alone that Leake's name was redacted solved the Confrontation Clause issue.  Given the Commonwealth's theory that only two perpetrators were involved in the crimes, it didn't take much deductive effort for the jury to sniff out that the "other guy" was Murphy's codefendant Leake.  <u>Accord</u>, <u>Vazquez</u>, 550 F.3d at 280-81 (finding a <u>Bruton</u> violation where only two defendants were involved in the alleged crime, the codefendant statement could only refer to the two co-conspirators, thus making redaction referencing the "other guy" not effective in concealing codefendant's identity); <u>Lee v. Collins</u>, No. 09-4023, 2010 WL 5059517, at *9 (E.D.Pa. July 22,

-23-

2010) (holding that where Commonwealth's consistent theory of the case was that two, and only two, individuals were involved in the charged crime, introduction of statements, without eliminating reference to the existence of another co-conspirator, directly implicated in plain and direct language the only other person accused of the crime; court unreasonably applied <u>Bruton</u> by not examining whether the statements directly implicated codefendant, which they did despite the substitution of the letter "X" for his name).

Trial counsel's failure to raise a <u>Bruton</u> objection was not reasonable under prevailing professional norms.  Combined with his failure to object to the Cruz hearsay, I recommend that the PCRA Court's conclusion that there was no possibility that the outcome of the proceeding could have been different is not a reasonable application of <u>Strickland</u>.  The constitutional prejudice of counsel's ineffectiveness in failing to raise a <u>Bruton</u> objection becomes patent when one considers that the PCRA Court's holding that its jury instructions were sufficient to cure the <u>Bruton</u> violation is also contrary to Supreme Court law. In <u>Bruton</u>, the Supreme Court itself recognized that jury instructions attempting to limit a jury's focus and application of codefendant statements are "intrinsically ineffective" because the inadmissible confession "cannot be wiped from the brains of the jurors."  <u>Id.</u>  391 U.S. at 129.  This Supreme Court law

-24-

cannot be squared with the PCRA Court's rationale that it presumed the jury followed its final instructions directing them to consider the statement only against codefendant Murphy and not as evidence against Leake.  Because the redaction created the unnatural "other guy" locution, the jury instruction – like that condemned in <u>Gray</u> – likely exacerbated the problem by calling attention to the fact that the codefendant statement mentioned another unidentified actor.  Had counsel raised and the Court overruled contemporaneous objections to the hearsay and codefendant statements, those objections would have been meritorious as a matter of federal constitutional law.

The defense was prejudiced and the result of the trial was thereby compromised because the only other direct evidence implicating Leake, the victim's in-court identification testimony, was impeached by his prior inconsistent statements to the police, his false testimony at the preliminary hearing, his history of drug use, and his drug use at the time of the incident.  Importantly, the only evidence tying Leake to the crime other than the hearsay, Murphy's confession, and Lewin's impeached testimony, was the circumstance that he was found hiding in a nearby house.  Neither Ms. Cruz nor Steve, the only other eye witnesses to the assault, were called by the Commonwealth to corroborate Lewin's account to the jury.  While the jury was still free to credit Lewin, contrary to the

Commonwealth's assertion, the improper evidence was not merely cumulative of other evidence.  In sum, the face of the record leads to the undeniable conclusion that the combined effect of the failure to object to the admission of the hearsay and codefendant confession was prejudicial.[6]

Subsidiarily, I further recommend that the failure of appellate counsel to appeal the denial of the severance motion is also of constitutional magnitude.  The severance motion was the counterpoint to the Bruton problem.  Leake argued that severance was necessary to avoid prejudice arising from the admission of

---

[6]For this reason, I also recommend that the Bruton error was not harmless beyond a reasonable doubt.  See Bond, 539 F.3d at 275-76 (recognizing that harmless error analysis is applicable to a Bruton claim); United States v. Richards, 241 F.3d 335, 341 (3d Cir. 2001) (same).  An error is not harmless if the constitutional violation had a "substantial and injurious effect" on the fairness of the trial.  Fry v. Pliler, 551 U.S. 112, 121 (2007) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).  This requires the petitioner to establish that the constitutional error resulted in actual prejudice.  Brecht, 507 U.S. at 637 (citing United States v. Lane, 474 U.S. 438, 449 (1986)).  A finding of actual prejudice is appropriate when there is "grave doubt" about whether the error influenced the jury's decision.  See Bond, 539 F.3d at 276 (quoting O'Neal v. McAninch, 513 U.S. 432, 436(1995)).  Here, the codefendant statement had a clear injurious effect because it was crucial to the Commonwealth's case: (1) there was no unimpeached evidence connecting Leake to the crime, other than the fact that he was placed near the scene in a compromising situation; and (2) the error of admitting the statement was compounded by the court's instruction highlighting the improperly admitted evidence.  Viewed objectively, the state of the record gives me grave doubt about the fairness of the trial.  Compare Bond (holding that where the Commonwealth presented extensive evidence of guilt, error could not have had a substantial and injurious effect or influence in determining the jury's verdict).

codefendant statements in a joint trial.  PCRA Decision at 7.
The PCRA Court found that any appeal of the trial court's denial
of the severance motion would have been futile because
Pennsylvania law favors joint trials, particularly trials
involving multiple defendants where much of the same evidence is
applicable to all defendants, and the redaction and jury
instruction cured any issue arising from the introduction of
Murphy's confession at the joint trial.  PCRA Decision at 7-8
citing Commonwealth v. Travers, 768 A.2d 845, 847 (Pa. 2001).

Federal law also favors joint trials.  Richardson, 481 U.S.
at 210 (stating that "Joint trials play a vital role in the
criminal justice system. . . .  Joint trials generally serve the
interests of justice by avoiding inconsistent verdicts and
enabling more accurate assessment of relative culpability –
advantages which sometimes operate to the defendant's benefit.").
And a defendant is not entitled to severance merely because he
has a better chance of acquittal in a separate trial.  Zafiro v.
United States, 506 U.S. 534, 540 (1993).

However, the Supreme Court has held that a severance should
generally be granted if the defendant would be prejudiced by the
introduction of an inculpatory prior statement of a codefendant.
See Zafiro at 539 (holding that courts should grant severance
only if there is a serious risk that a joint trial would
compromise a specific trial right of one of the defendants, or

prevent the jury from making a reliable judgment about guilt or
innocence; Bruton evidence that is probative of one defendant's
guilt but technically admissible only against a codefendant might
present a risk of prejudice); Gray, 523 U.S. at 192-95 (stating
that because the use of an accomplice's confession "creates a
special, and vital, need for cross-examination," a prosecutor
desiring to offer such evidence must comply with Bruton, hold
separate trials, use separate juries, or abandon the use of the
confession).  Because the redaction and jury instruction were
legally insufficient, the basis for denial of the severance
motion was also constitutionally deficient.  The failure of
appellate counsel to raise the issue therefore fell below
professional norms resulting in prejudice.

**IV.   OTHER CLAIMS OF INEFFECTIVENESS OF APPELLATE COUNSEL**

Leake also argues that his direct appeal counsel was
ineffective for failing to appeal the trial court's denial of his
motion for reconsideration of sentence.  See Pet. ¶ 12, PCRA Memo
at 13.  To the extent this issue is not mooted, I recommend that
this argument is meritless.  The PCRA Court found as a matter of
state law that there was ample justification in the record to
support the sentence.  PCRA decision at 6-7.  The Court noted
that for a claim of ineffectiveness of counsel, the defendant
must show that he would have been successful on the issues that
his appellate counsel failed to appeal.  Id. citing Commonwealth

-28-

<u>v. May</u>, 898 A. 2d 559 (Pa. 2006).  The PCRA Court noted that
there was ample justification for Leake's sentence, including a
presentence report, arguments of both the Commonwealth and
defense counsel at sentencing, and the lack of responsibility and
remorse exhibited by Leake for his crimes.  It also noted that
Leake's arrest for this crime occurred only four days after going
on probation for a separate offense and that this case marked
Leake's second conviction for a violent crime.  <u>Id.</u> at 7.  As a
result, it concluded that the sentence was objectively reasonable
and that the appellate counsel could not have been
constitutionally ineffective for failing to raise a meritless
appeal issue.  <u>Id.</u>

   The PCRA Court's application of <u>Strickland</u> was not
unreasonable.  Preliminarily, a federal habeas court is bound by
a state court determination of state law and has no authority to
review it.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991)
(holding "the Due Process Clause does not permit the federal
courts to engage in a finely tuned review of the wisdom of state
evidentiary rules" quoting <u>Marshall v. Lonberger</u>, 459 U.S. 422,
438, n. 6 (1983)); <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005)
("We have repeatedly held that a state court's interpretation of
state law, including one announced on direct appeal of the
challenged conviction, binds a federal court sitting in habeas
corpus"); <u>Warren v. Kyler</u>, 422 F.3d 132, 137 (3d Cir.2005) (state

court determinations of state law issues are not properly before federal court on habeas review).  Because the ruling that Leake's sentence was reasonable is a binding statement of state law, it necessarily follows that he cannot demonstrate the prejudice element of a <u>Strickland</u> claim.  The failure to include the issue on direct appeal would have been meritless and counsel cannot be deemed to be constitutionally ineffective for failing to raise a meritless claim.

Leake's final claim is that his direct appeal counsel was ineffective for failing to appeal the denial of the Rule 600(G) speedy trial motion.  <u>See</u> PCRA Memo at 14-17.  Under Rule 600(G), the Commonwealth must bring a defendant to trial within 365 days after the complaint is filed.  Pa. R. Crim. P. 600.  Leake argued to the PCRA Court that time ran under the state rule.  <u>See</u> PCRA Memo at 14.  He also averred that the failure violated his federal speedy trial rights.  He argued that appellate counsel was ineffective for failing to appeal the denial because trial counsel "obviously thought this issue had merit," and appellate counsel had no reasonable basis for not raising it on appeal." PCRA Memo at 17.

The PCRA court rejected the claim, finding under Pennsylvania law that the 365 day time period had not elapsed due to continuances requested by the defense.  PCRA Decision at 8-9. Accordingly, the court concluded that appeals counsel could not

have been ineffective for failing to pursue a meritless issue.
Id. at 9-10.  For the same reasons expressed on the immediately
preceding claim, I recommend that this decision was also not an
unreasonable application of Strickland.[7]

For all of these reasons, I make the following:

---

[7]Also pending before the court are duplicate motions filed
by Petitioner seeking appointment of counsel and for
reconsideration of prior orders denying appointment of counsel.
Because the constitutional defect in his conviction is apparent
on the face of the state court record, there was no need to hold
an evidentiary hearing in this matter.  Accordingly, there was no
need to appoint counsel to represent Leake at this stage of the
proceedings.  By separate order, I will deny the pending motions,
with leave to Petitioner to seek appointment of counsel before
Judge Schiller should the Commonwealth file objections to this
Report and Recommendation.

## RECOMMENDATION

AND NOW, this 28th day of November, 2011, IT IS RESPECTFULLY RECOMMENDED that the Petition of Ricky Leake for writ of habeas corpus should be CONDITIONALLY GRANTED; that Petitioner should be discharged from all custody resulting from his convictions and sentences in the Philadelphia Court of Common Pleas in Criminal No. CP-51-CR-1007811-2003 UNLESS, within 180 days from the date of the final determination of this matter, the Commonwealth of Pennsylvania retries the charges against Petitioner.  I further RECOMMEND that there is probable cause to issue a certificate of appealability, limited to the issue of ineffective assistance of counsel arising from the failure to object to the introduction of codefendant statements and the failure to appeal the denial of Petitioner's severance motion.

Any party may file objections to this Report and Recommendation.  See  Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.


BY THE COURT:

/s/ Arnold C. Rapoport

_____
ARNOLD C. RAPOPORT
UNITED STATES MAGISTRATE JUDGE